**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF**
**NORTH CAROLINA**

| | |
|---|---|
| ASHEVILLE BLADE, LLC,; MELISSA COIT; and MATILDA BLISS; | No. |
| *Plaintiffs*, | |
| v. | **COMPLAINT** |
| CITY OF ASHEVILLE; MICHAEL LAMB, in his official capacity as Asheville Police Chief; MICHAEL YELTON, in his individual capacity; MICHAEL MCCLANAHAN, in his individual capacity; MELISSA LACKEY, in her individual capacity; JOHNATHAN MCCAIN, in his individual capacity; LAKEISHA HAWES, in her individual capacity; MELANIE GRIFFIN, in her individual capacity; AMY STAPANOWICH, in her individual capacity; TAYA OVERHOLT, in her individual capacity; MATT STAPANOWICH, in his individual capacity; IAN COOPER, in his individual capacity; JOHN ZIEGLER, in his individual capacity; and SAMUEL DEGRAVE, in his individual capacity; | |
| *Defendants*. | |

1

## NATURE OF THE ACTION

1.    On the evening of December 25, 2021, a large group of Asheville Police Department (APD) officers executed a plan to clear an encampment of homeless people and community activists in Aston Park. Two journalists from *The Asheville Blade,* Melissa Coit and Matilda Bliss, were on the scene to report on APD's activities.

2.    APD officers issued a dispersal order and began threatening arrests. Coit and Bliss identified themselves to APD officers as journalists, and did not in any way interfere with APD's clearing efforts. Nonetheless, APD officers illegally arrested Coit and Bliss for trespassing and held Bliss's phone for nearly a month without obtaining a warrant.

3.    The APD officers' arrests of Coit and Bliss violated Plaintiffs' rights to record police activities, to gather and report news in public spaces, to engage in speech and expression critical of government officials, and to equal protection of the laws, as secured by the First and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 14 and 19 of the North Carolina constitution. Because Bliss and Coit had a limited right to remain on the scene to report and record APD officers' actions, their arrests for trespassing lacked probable cause and violated the Fourth Amendment and Article I, Section 20 of the North Carolina constitution. In the aftermath of the arrests, APD officers continued to violate

2

Plaintiff Bliss' rights by holding her phone without a warrant for 25 days, in violation of the Fourth Amendment to the U.S. Constitution, Article I, Section 20 of the North Carolina constitution, and the Privacy Protection Act of 1980 ("PPA"), codified at 42 U.S.C. §§ 2000aa-1—2000aa-7.

## JURISDICTION AND VENUE

4.     This is an action for declaratory relief, injunctive relief, and damages brought under 42 U.S.C. § 1983, 42 U.S.C. § 2000aa-6, and 28 U.S.C. §§ 2201-2202.

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction over the claims under 28 U.S.C. § 1343(a)(3)-(4) and 42 U.S.C. § 2000aa-6(h).

6.     This Court has supplemental jurisdiction over related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

7.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the City of Asheville, located within this district.

8.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3

## PARTIES

9.      Plaintiff *Asheville Blade, LLC* ("*The Blade*") is an Asheville-based news co-op that focuses on in-depth investigative reporting and airing "sharp views" on local issues. The *Blade* was headquartered in and conducted reporting activities in Asheville at all times relevant to this Complaint.

10.     Plaintiff Melissa Coit, who is also known by and writes under the name Veronica Coit, is a journalist and one of four members of the *Blade* co-op. Coit currently resides in Colorado but was a journalist residing and working in Asheville at all times relevant to this Complaint.

11.     Plaintiff Matilda Bliss is a journalist and one of four members of the *Blade* co-op. Bliss is currently a resident of Asheville and was a journalist residing and working in Asheville at all times relevant to this Complaint.

12.     Defendant City of Asheville is a municipal corporation and a city organized by charter under Chapter 160A of the North Carolina General Statutes. *See also* City of Asheville Ordinances, Part I, Subpart A, art. I, §§ 1, 3; Session Laws 1981, ch. 27, § 2. It maintains and administers the APD, over which it exercises supervisory responsibility. The City, acting through the City Manager and APD's Chief of Police, is responsible for the policy, practice, supervision, implementation, and conduct of all APD matters, including the City policies and practices challenged in this action, and the appointment, training, supervision,

and conduct of APD personnel. *See* City of Asheville Ordinances, Part I, art. I, §

13-1; Subpart A, art. III, § 24; N.C. Gen. Stat. § 160A-285.

13.     Defendant Michael Lamb is the current Chief of Police for the

APD. In this role, he has ultimate authority to control, and responsibility for, the

actions of APD officers and agents. Defendant Lamb exercises supervisory

authority, under the color of state law, over the enforcement of state and local

laws.  Lamb also has the authority and responsibility to establish policies,

practices, customs, procedures, protocols, and training for APD. *See* N.C. Gen.

Stat. § 160A-285; City of Asheville Ordinances, Part I, Ch. 13, art. I, § 13-1.

Defendant Lamb is named in his official capacity.

14.     Defendant Michael Yelton served as an APD Deputy Chief of

Operations for the Asheville Police Department in December 2021. In this role, he

supervised and controlled the activities of APD officers charged with enforcing

state and local laws in Asheville, including laws applicable to assemblies and

protests in public places. Yelton directed and supervised the APD's Aston Park

clearing actions, including arrests, on the night of December 25, 2021. Upon

information and belief, Defendant Yelton approved and ratified Coit's and Bliss's

arrests for trespassing on December 25, 2021, despite knowing that they were

journalists engaged in news gathering. Defendant Yelton is named in his individual

capacity.

15.     Defendant Michael McClanahan was an APD lieutenant in December 2021. Defendant McClanahan supervised and participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. McClanahan directed APD officers to arrest Coit and Bliss, despite knowing that they were journalists engaged in news gathering. Defendant McClanahan is named in his individual capacity.

16.     Defendant Melissa Lackey was an APD sergeant in December 2021. Defendant Lackey supervised and participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. Lackey participated in the arrests of Coit and Bliss, despite knowing that they were journalists engaged in news gathering. Defendant Lackey is named in her individual capacity.

17.     Defendant Johnathan McCain was an APD officer in December 2021. Defendant McCain participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. McCain participated in the arrests of Coit and Bliss, despite knowing that they were journalists engaged in news gathering. Defendant McCain is named in his individual capacity.

18.     Defendant Lakeisha Hawes was an APD officer in December 2021. Defendant Hawes participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. Hawes participated in the arrests of Coit and Bliss, despite knowing that they were journalists engaged in news gathering. Defendant Hawes is named in her individual capacity.

19.     Defendant Melanie Griffin was an APD officer in December 2021. Defendant Griffin participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. Griffin participated in the arrests of Coit and Bliss, despite knowing that they were journalists engaged in news gathering. Defendant Griffin is named in her individual capacity.

20.     Defendant Amy Stapanowich ("A. Stapanowich") was an APD officer in December 2021. Defendant A. Stapanowich participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. A. Stapanowich participated in the arrests of Coit and Bliss, despite knowing that they were journalists engaged in news gathering. Defendant A. Stapanowich is named in her individual capacity.

21.     Defendant Taya Overholt was an APD officer in December 2021. Defendant Overholt participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. Overholt participated in the arrests of Coit and Bliss, despite knowing that they were journalists engaged in news gathering. Defendant Overholt is named in her individual capacity.

22.     Defendant Matt Stanpanowich ("M. Stapanowich") was an APD officer in December 2021. As the officer primarily in charge of handling the property of people arrested on December 25 in connection with the clearing of the Aston Park encampment, M. Stapanowich participated in Plaintiffs Bliss's and Coit's unlawful arrests and the illegal seizure of Plaintiff Bliss's phone.

7

23.     Defendant Ian Cooper was an APD detective in December 2021. Defendant Cooper participated in the illegal seizure of Plaintiff Bliss's phone.

24.     Defendant John Ziegler was an APD detective in December 2021. Defendant Ziegler supervised and participated in the illegal seizure of Plaintiff Bliss's phone.

25.     Defendant Samuel DeGrave was an APD detective in December 2021. Defendant DeGrave participated in the illegal seizure of Plaintiff Bliss's phone.

## **FACTS**

## BACKGROUND

26.     On Christmas night 2021 Plaintiffs Bliss and Coit were arrested by APD officers while reporting on and documenting APD's clearing of a homeless encampment in Aston Park. By the end of the evening, APD officers had arrested and charged both with second-degree trespassing.

27.     At the time of the arrest, Bliss and Coit were journalists for *The Asheville Blade*, a local news publication that often sharply criticizes the City of Asheville ("the City") government and the APD.

28.     Prior to the December 25, 2021 arrests, *The Blade* had reported on and condemned APD's clearing of homeless encampments. *Blade* reporters had also

critically reported on APD responses to protests, including protests against the City's treatment of its homeless population.

29.     Prior to the December 25 arrests, officials from the APD and the City had expressed their general disdain for media scrutiny as well as their specific dislike of *The Blade*'s coverage.

30.     In 2020, while Plaintiff Coit was reporting for *The Blade* on a protest against police brutality, APD officers arrested Coit for impeding traffic and failure to disperse, but these charges were later dropped.

31.     In 2021, APD cleared over twenty homeless encampments, drawing the attention of local journalists and community members. *The Blade* published critical pieces on these efforts, many of which were written by or partly attributed to Plaintiffs Bliss or Coit.

32.     On December 19, 2021, community supporters of Asheville's homeless population began a multi-day protest and art build at a homeless encampment in Aston Park, a public park owned and operated by the City.

33.     Coit went to the park at least once before December 25 to photograph the protests for *The Blade*. After hearing of the potentially newsworthy interactions between APD officers and protesters, Bliss covered the second day of the protest for *The Blade*.

9

34.     Bliss returned to the protest three more times to report for *The Blade*.  Her coverage included photojournalism, contributions to articles on *The Blade's* website, and posts to *The Blade's* public social media channels criticizing the APD and the City.

35.     On December 19, 2021, the first day of the protest, APD officers announced that campers and protesters remaining in the park past 10:00 p.m. would be arrested for trespass based on a City ordinance that established a curfew in public parks.  Three days later, on December 22, 2021, Defendant Lamb, then an APD captain, warned protesters that they might be arrested for felony littering.

36.     APD did not take official action against any protesters until Christmas night when, shortly after 10:00 p.m., APD began dismantling the encampment and ordering those assembled there to leave the park.  Bliss was present and reporting on the events at this time.

37.     Coit joined Bliss at the park to bring her Christmas dinner, then stayed to assist with reporting. Bliss and Coit were the first individuals confronted by APD officers who approached the park that evening.

38.     As officers approached, Bliss and Coit began documenting video and audio of the officers' actions. Bliss showed officers her *Blade*-issued official press credentials to identify herself as a journalist.  Coit did not have their[1] credentials, but

---

[1] Coit uses "they/them" pronouns.

both Bliss and Coit repeatedly and loudly stated that they were journalists covering police activities — and specifically made these statements to APD officers attempting to disperse them.

39.     Plaintiffs Bliss and Coit remained out of APD officers' way as they dispersed and cleared protestors and people camping in the park. As Defendant McClanahan later admitted, neither Bliss nor Coit interfered with APD officers' activities to disperse and clear the assembly in the park.

40.     Despite these facts, and disregarding Bliss and Coit's obvious recording of APD activities and repeated statements that they were reporters, Defendant McClanahan instructed Bliss and Coit to disperse along with the protesters.

41.     APD suggested that Bliss and Coit leave the park premises and observe and report from a spot about 150 feet away and down a hill, where their view of the events was obstructed, and they could not document or report on the protest and the APD's clearing of the encampment.

42.     Standing firm on their rights as journalists reporting on an event of public concern in a public park, Bliss and Coit continued doing their jobs and documenting the newsworthy events occurring in plain view.

43.     Body camera footage from Defendant APD lieutenant McClanahan shows APD officers discussing the plan to clear the park, with Defendant Lackey

saying "[w]hy don't we do [Bliss and Coit]" first, since they're videotaping." The assembled officers, including Defendant McClanahan, who was supervising the clearing efforts, agreed with or acquiesced in this suggestion.

44.     Defendant Lackey informed Defendant McClanahan of Plaintiff Coit's claim that Coit and Bliss could not be arrested by APD because they were reporters. Defendant McClanahan replied: "Yes, we can."

45.     Defendant McClanahan instructed APD officers to arrest Plaintiffs Bliss and Coit.

46.     Defendant Overholt led the arrest of Plaintiff Coit, assisted by Defendants Lackey, McClanahan and A. Stapanowich.

47.     Upon informing Bliss that she faced arrest, Defendant McCain stated: "Here's your other member of the press. Wonder if [Bliss] is going to wise up."

48.     Defendant Griffin led the arrest of Plaintiff Bliss, assisted by Hawes and McCain.

49.     M. Stapanowich assisted in the arrests, including collecting Bliss's and Coit's phones and logging the items into APD's system.

50.     Plaintiffs Bliss and Coit were charged with second-degree trespass, processed at the Buncombe County Detention Center, and released early on the morning of December 26, 2021.

51.    Although Coit received her phone back upon release, Defendant M. Stapanowich continued to hold Bliss' phone without having any warrant authorizing him to do so.

52.    Over the next 25 days, Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave continued to hold and refused to return Bliss's cell phone despite not having any warrant authorizing them to do so.

53.    A search warrant for Bliss's phone was not sought and obtained until January 19, 2022.

54.    The search warrant application failed to note that Bliss was a journalist and did not reference the Privacy Protection Act of 1980 ("PPA")

55.    After its contents were searched, the phone was finally released to Bliss on March 8, 2022, 74 days after its initial seizure.

56.    In December 2021, City Manager Debra Campbell and/or APD's then-Police Chief David Zack set final departmental policy related to police interactions with journalists who are recording and newsgathering in public places. Campbell and Zack had ultimate authority and responsibility to train and instruct APD personnel on the First Amendment rights of journalists, and to oversee and control APD enforcement of trespassing laws against newsgathering journalists. *See* N.C. Gen. Stat. § 160A-285; City of Asheville Ordinances, Part I, Ch. 13, art. I, § 13-1; City of Asheville Ordinances, Part I, Subpart A, art. III, § 24.

13

57.     Upon information and belief (based on statements by City Manager Campbell and Police Chief Zack expressing approval of Coit and Bliss' arrests, detailed below, as well as APD officers' conduct towards Bliss and Coit on December 25, 2021), Campbell and Zack, as ultimate policymakers for the APD, failed to train and instruct – nor did they direct others to train and instruct – APD officers on how to enforce trespassing and other generally applicable laws without violating journalists' constitutional and statutory rights to gather news.

## CRIMINAL PROCEEDINGS

58.     After their Christmas arrest, Bliss and Coit were tried and convicted of second-degree trespassing at the April 19, 2023 session of the Criminal District Court of Buncombe County.

59.     The two appealed for a jury trial *de novo* in Superior Court.

60.      Bliss and Coit were tried and convicted before a jury on June 15, 2023 in the Superior Court of Buncombe County, the Honorable Thomas Davis presiding.

61.     During the jury's deliberation, the jury foreperson asked the court for guidance, specifically on how to apply the First Amendment and whether the jury could consider Bliss's and Coit's status as members of the press to determine

14

whether the City's trespassing ordinance applied to their newsgathering at a public park.

62.     The court confirmed to Bliss and Coit's counsel that it had not instructed the jury on the First Amendment, and that it intended to tell the jury that it could consider all available evidence, including Bliss and Coit's press status.

63.     However, the State objected to the jury considering Bliss and Coit's First Amendment rights. The court limited the jury to the factual question of whether Bliss and Coit had trespassed under the pattern instructions in N.C.P.I–Crim. 214.31A, which do not provide any guidance on how to evaluate trespassing charges when the defendant was recording and/or news gathering at the time of arrest.

64.     A few days later, on June 22, 2023, Judge Davis issued a written ruling denying Bliss' and Coit's motion to dismiss, stating that the ordinance was not unconstitutional as applied to them and that granting the motion would discriminate against other non-journalist speakers at the park.

65.     That finding conflicts with the U.S. Department of Justice's recognition that dispersal orders must be narrowly tailored to comply with journalists' First Amendment rights to cover policing of protests, especially where there are not "ample open alternative channels" for such newsgathering.[2]

---

[2] *See* U.S. Dep't of Justice, *Investigation of the City of Minneapolis and Minneapolis Police Dep't* at 52 (June 16, 2023), available at https://www.justice.gov/d9/press-

66.     Bliss and Coit appealed their conviction to the North Carolina Court of Appeals and are represented by the First Amendment Clinic at Duke Law School.

67.     The appeal remains pending as of the filing date of this Complaint.

## BIAS AGAINST *THE ASHEVILLE BLADE*

68.     Records prior to Bliss and Coit's arrest indicate that APD officials were well aware of, and disagreed with, *The Blade's* critical coverage of the City's treatment of homeless Ashevillians.

69.     Email communications following a previous homeless encampment sweep in April 2021 showed the head of a neighborhood watch group with close ties to APD emailing officers about "trying to fight back" against *The Blade*.  Officers forwarded the email to their colleagues at APD and to Chief Zack and City Manager Campbell.

70.     At least some of the officers directly involved in Bliss and Coits' arrests, including McClanahan, A. Stapanowich, and Overholt, received the email and/or were otherwise aware of APD and City officials' animus against *The Blade* and its reporters.

---

releases/attachments/2023/06/16/minneapolis___findings_report_2023.06.15_0.pdf (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

71.     At a January 25, 2022, public safety committee meeting, City Manager Campbell spoke in support of Bliss and Coit's arrests. There, she inaccurately claimed that police have discretion to decide who is a journalist and who is not.

72.     In a March 22, 2023 podcast interview about Bliss and Coit's case, then-APD Chief David Zack remarked "maybe it was the journalists who were the problem."

## THE AFTERMATH

73.     *The Blade* is a small news outlet with limited resources. Having two of its reporters arrested and embroiled in legal proceedings significantly impinged on its ability to inform its readers and serve its community.

74.     The arrests and prosecutions of Bliss and Coit have taken a toll on *The Blade. The Blade* has lost reporting opportunities due to the time its reporters spent defending themselves from these unconstitutional claims and prosecutions rather than reporting the news.

75.     *The Blade* has been unable to cover key events and policy meetings because the journalists were required to attend court, whether as defendants or witnesses.

76.     *The Blade* experienced a reduced rate of donations and subscriptions because of its inability to provide the same level of news coverage following Bliss and Coit's arrests.

77.     Since the arrest, Bliss has suffered severe emotional and physical health ailments attributable to the anxiety and fear that her arrests and criminal charges have caused.

78.     Since her arrest, Bliss has visited with doctors over twenty-two times, compared to nine visits total between January 2018 and December 2021.

79.     Among other symptoms of her increased emotional distress and stress, Bliss has been diagnosed with gastroesophageal reflux disease (GERD) and required extensive dental work to address tooth grinding. She has also visited the emergency room multiple times since December 2021, including for chest and abdominal pain, rapid pulse, and elevated blood pressure.

80.     Bliss's mental health has deteriorated significantly since her 2021 physical exam prior to the arrest, and she has experienced increased anxiety and depression.

81.     As a result of these health issues, Bliss has had to take time to rest and spend unexpected money on medical care, insurance, and supplies.

18

82.     Since the arrest, Coit has also suffered severe emotional and physical health ailments attributable to the anxiety and fear that their arrests and criminal charges have caused.

83.     Coit has experienced feeling dehumanized, hypervigilant, powerless and violated— "as if my rights didn't matter."

84.     Deep emotional, psychological, and practical harm caused by the arrests continues to impact Coit's and their family's lives.

85.     Coit's arrest and criminal charges contributed to their decision to leave Asheville. Before moving, they adjusted their routes to avoid Aston Park. Being in the area triggered intense panic, including chest tightening, heart racing, and shaking hands.

86.     Police cars, uniforms, and sirens cause Coit particular anxiety and fear. They have experienced nightmares and insomnia as a result of their arrest and charges, as well as increased gastrointestinal issues and joint pain. Their personal relationships with their spouse and child became strained.

87.     The financial impact of the arrests and charges on Coit has been significant, including legal costs, lost income, and ongoing medical expenses.

# CLAIMS FOR RELIEF

## FIRST CLAIM

**42 U.S.C § 1983 and the First, Fourth, and Fourteenth Amendments to the U.S. Constitution**
**(Unlawful Arrests in Violation of Right to Record and Gather News)**
**(Brought by All Plaintiffs Against Defendants City of Asheville and Lamb)**

88.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

89.     Pursuant to 42 U.S.C. § 1983, Plaintiffs assert claims against Defendants City of Asheville and Lamb (in his official capacity) and under the First and Fourth Amendments, as applied to Defendants by the Fourteenth Amendment.

90.     Under the First Amendment, government officials may not "abridg[e] the freedom of speech, or of the press[.]" U.S. Const. amend. I.

91.     The First Amendment protects the fundamental right to peaceably record and gather news on public property, including in traditional public forums like city parks.

92.     Police conduct towards homeless individuals, as well as police conduct in responding to and dispersing protests, are matters of profound public concern.

93.     Journalists and other citizens alike have a First Amendment right to record police conducting official business.

20

94. Journalists also have a limited right of access to gather news about public protests and their aftermath, including police dispersal of protesters.

95. City Manager Campbell and then-Police Chief Zack, despite knowing of intense journalistic interest in APD activities from at least 2020 onward (especially in relation to protests) failed to adequately train and instruct – nor did they direct others to train and instruct – APD officers on how to enforce generally applicable laws without violating journalists' constitutional and statutory rights to record and gather news.

96. Over the past decade, Asheville has seen an uptick in controversial protests in the city, including large protests where protestors sharply criticized the police, and police and protestors clashed in the streets. In light of these realities, Campbell's and Zack's failures to train and instruct APD officers on the rights of journalists who are recording and observing APD activities at public protests, specifically in the context of police giving dispersal orders, amounted to an official policy or custom and demonstrated deliberate indifference to the rights of journalists and others recording police responses to public protests and assemblies.

97. The City's deliberate failure to adequately instruct and train APD officers on the rights of journalists covering protests and other public events foreseeably led to the violation of Plaintiffs' rights on December 25, 2021. This failure to train was also reflected in, among other things, APD's 2020 arrest of

21

Plaintiff Coit for impeding traffic and failure to disperse while she was reporting on a protest against police brutality, and APD's 2016 arrest of *Mountain Xpress* reporter Dan Hesse for allegedly blocking an entrance while he was reporting on a Black Lives Matter protest at APD headquarters.

98.     Bliss and Coit had a right to remain in Aston Park for a limited time to report on the events of Christmas night 2021 while APD officers dispersed protestors and campers. Coit and Bliss remained only to report and did not interfere with police activities.

99.     Even though Plaintiff Bliss and Coit acted peacefully and did not interfere with APD efforts to clear the encampment and arrest protestors, Defendants McCain, Hawes, Griffin, A. Stapanowich, Overholt, Lackey, and M. Stapanowich arrested Plaintiffs Coit and Bliss for trespassing. They chose to arrest Plaintiffs Coit and Bliss before completing dispersal of the encampment and protest, with full knowledge that Bliss and Coit were members of the press engaged in filming and reporting on police activities.

100.    These arrests were directed and approved by Defendants Yelton and McClanahan. McClanahan was present and agreed to Defendant Lackey's proposal to arrest Coit and Bliss first, "since they're videotaping."

101.    The actions by Defendants Yelton, McClanahan, McCain, Hawes, Griffin, A. Stapanowich, Overholt, Lackey, and M. Stapanowich to arrest Plaintiffs

Coit and Bliss (whom these Defendants knew to be engaged in newsgathering at the time of arrest) violated Plaintiffs' First Amendment right to record and gather news on public property.

102.    These Defendants' enforcement of trespassing laws against  Plaintiffs Coit and Bliss were not reasonable time, place or manner restrictions.   This enforcement was unnecessary to carry out APD activities that evening and were not narrowly tailored to serve any legitimate government interests.

103.    The use of generally applicable trespassing law by Defendants City of Asheville, Lamb, Yelton, McClanahan, McCain, Hawes, Griffin, A. Stapanowich, Overholt, Lackey, and M. Stapanowich to arrest and charge Coit and Bliss substantially and impermissibly burdened Plaintiffs' First Amendment right to gather news.

104.    Because Plaintiffs Bliss and Coit had a First Amendment right to be present in Aston Park for the limited purpose of recording and reporting on APD activities, they were not present "without authorization" as required for a second-degree trespassing charge. N. C. Gen. Stat. § 14-159.13(a). Thus, Defendants Yelton, McClanahan, McCain, Hawes, Griffin, A. Stapanowich, Overholt, Lackey, and M. Stapanowich unlawfully authorized, directed, or effectuated the arrests of Coit and Bliss without probable cause.

105. Because of the City's failure to provide adequate training and intsruction, APD officers openly disregarded Plaintiff Bliss's and Coit's assertion of their First Amendment rights, leading to Bliss' and Coit's wrongful arrests for second-degree trespassing.

106. Plaintiffs suffered damages as a result of the arrests of and charges against Plaintiffs Coit and Bliss.

107. Plaintiffs Bliss and Coit suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from their arrests and charges.

108. Plaintiff *the Blade* experienced economic losses due to the arrests and charges against Plaintiffs Coit and Bliss, including lost reporter time and reduced frequency and content of reporting, which in turn impacted its ability to attract and retain subscribers and patrons.

## SECOND CLAIM

**42 U.S.C § 1983 and the First and Fourteenth Amendments to the U.S. Constitution**
**(Violation of Rights to Speech, Recording, Newsgathering, and Equal Protection-- Retaliatory and Selective Enforcement)**
**(Brought by All Plaintiffs Against all Defendants Except Cooper, Ziegler, and DeGrave)**

109. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

24

110.     Pursuant to 42 U.S.C. § 1983, Plaintiffs assert claims against Defendants City of Asheville and Lamb (in their official capacities), and Defendants Yelton, McClanahan, Lackey, McCain, Hawes, Griffin, A. Stapanowich, Overholt, and M. Stapanowich (in their individual capacities) that these Defendants' enforcement of trespassing laws against them violates their First Amendment rights to freedom of speech and press (as applied to Defendants by the Fourteenth Amendment) and the Equal Protection Clause of the Fourteenth Amendment.

111.     Defendants Yelton, McClanahan, Lackey, McCain, Hawes, Griffin, A. Stapanowich, Overholt, and M. Stapanowich targeted Bliss and Coit for arrest and trespassing charges because of their recording of and reporting on APD activities, as well as Plaintiffs' critical statements and reporting on APD actions. These Defendants' decisions to arrest and charge Plaintiffs Coit and Bliss were motivated by Plaintiffs' speech, recording, newsgathering, and reporting.

112.     According to the U.S. Press Freedom Tracker, which maintains a database of legal incidents involving journalists, Plaintiffs Bliss and Coit have been the only journalists in North Carolina arrested and charged with trespassing while newsgathering since at least 2017. Plaintiffs are unaware of any journalists, other

25

than Coit and Bliss, who have been arrested for and charged with trespassing while newsgathering in Asheville.[3]

113.    Defendants Yelton, McClanahan, Lackey, McCain, Hawes, Griffin, A. Stapanowich, Overholt, and M. Stapanowich arrested, directed, and/or approved of the arrests of Plaintiffs Coit and Bliss and enforced trespassing laws against them because of Plaintiffs' critical reporting and speech related to APD. By arresting Plaintiffs and charging them with trespassing, these Defendants aimed to punish Plaintiffs for their recording, reporting, and speech and to suppress and chill further reporting and speech by Plaintiffs, in violation of the First Amendment and the Equal Protection Clause.

114.    Plaintiffs suffered damages because of the unlawful arrests of and charges against Bliss and Coit.

115.    Plaintiffs Bliss and Coit suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from their arrests and charges.

116.    Plaintiff *The Blade* experienced economic losses due to the arrests and charges against Plaintiffs Coit and Bliss, including lost reporter time and

---

[3] As noted above, APD arrested Coit for allegedly impeding traffic and failure to disperse while she was reporting at a 2020 protest against police brutality, and *Mountain Xpress* reporter Dan Hesse was arrested for allegedly blocking an entrance to APD headquarters in 2016 while reporting on a Black Lives Matter protest. In both cases, the charges were later dropped.

26

reduced frequency and content of reporting, which in turn impacted its ability to attract and retain subscribers and patrons.

## THIRD CLAIM

**42 U.S.C § 1983 and the Fourth Amendment to the U.S. Constitution**
**(Seizure of Plaintiff Bliss's Phone)**
**(Plaintiff Bliss Against Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave)**

117.    Plaintiff Bliss re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

118.    Plaintiff Bliss asserts claims against Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave (in their individual capacity) pursuant to 42 U.S.C. § 1983, that these Defendants' warrantless seizure of her phone violated her Fourth Amendment rights against unreasonable searches and seizures (as applied to Defendants by the Fourteenth Amendment).

119.    The decisions of Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave to continue holding Plaintiff Bliss's phone after Bliss' release from jail on December 26, 2021 until January 19, 2022 without any warrant authorizing this prolonged seizure was unreasonable and not necessitated by any exigent circumstances.

27

120.     Plaintiff Bliss suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from the nearly month-long warrantless seizure of her phone.

## FOURTH CLAIM

### Article I, Sections 14, 19, and 20 of the North Carolina Constitution
### (Unlawful Arrests in Violation of Right to Record and Gather News)
### (Against Defendants City of Asheville and Lamb)

121.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

122.     Plaintiffs bring claims against Defendants City of Asheville and Lamb (in his official capacity) under Article I, Sections 14 and 20 of the North Carolina constitution.

123.     Article I, Section 14 provides: "Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse."

124.     Article I, Section 14 provides at least the same level of protection for freedom of the press and speech as the First Amendment.

125.     Article I, Section 19 provides in relevant part: "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land."

28

126.    Article I, Section 20 provides: "General warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted."

127.    Article I, Sections 19 and 20 protect North Carolinians against unreasonable and unlawful arrests and provides at least the same level of protection from unlawful arrest as the Fourth Amendment.

128.    The North Carolina Constitution authorizes a cause of action for damages against state officials in their official capacity when they violate the rights found in Article I, including the rights to freedom of the press and free speech.

129.    Plaintiffs lack an adequate state common law or statutory remedy to recover for a violation of their state constitutional rights to free speech and against warrantless, unreasonable and unlawful arrests.

130.    For the same reasons articulated in the First Claim for relief, Defendants' actions violate Article I, Sections 14, 19, and 20 of the North Carolina constitution.

131.    Plaintiffs suffered damages because of the arrests of and charges against Plaintiffs Coit and Bliss.

132.    Plaintiffs Bliss and Coit suffered emotional distress and increased stress, anxiety and fear, as well as economic losses resulting from their arrests and charges.

133.    Plaintiff *The Blade* experienced economic losses due to the arrests and charges against Plaintiffs Coit and Bliss, including lost reporter time and reduced frequency and content of reporting, which in turn impacted its ability to attract and retain subscribers and patrons.

## **FIFTH CLAIM**

### **Article I, Sections 14 and 19 of the North Carolina Constitution**
### **(Retaliation for Speech and Newsgathering)**
### **(Against Defendants City of Asheville and Lamb)**

134.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

135.    Plaintiffs bring claims against Defendants City of Asheville and Lamb (in their official capacities) under Article I, Sections 14 and 19 of the North Carolina constitution.

136.    Article I, Section 14 provides: "Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse."

137.    Article I, Section 14 provides at least the same level of protection for the press and free speech as the First Amendment.

30

138.    Article I, Section 19 provides in relevant part: "No person shall be denied the equal protection of the laws[.]"

139.    Article I, Section 19 provides at least the same level of protection as the equal protection clause of the Fourteenth Amendment.

140.    The North Carolina Constitution authorizes a cause of action for damages against state officials in their official capacity when they violate the rights found in Article I, including the rights to free speech and equal protection.

141.    Plaintiffs lack an adequate state common law or statutory remedy to recover for a violation of their state constitutional right to free speech.

142.    For the same reasons articulated in the Second Claim for relief, Defendants' actions violate Article I, Sections 14 and 19 of the North Carolina constitution.

143.    Plaintiffs suffered damages as a result of the arrests of and charges against Plaintiffs Coit and Bliss.

144.    Plaintiffs Bliss and Coit suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from their arrests and charges.

145.    Plaintiff *The Blade* experienced economic losses due to the arrests and charges against Plaintiffs Coit and Bliss, including lost reporter time and reduced frequency and content of reporting, which in turn impacted its ability to attract and retain subscribers and patrons.

## SIXTH CLAIM

**Article I, Section 20 of the North Carolina Constitution**
**(Seizure of Plaintiff Bliss's Phone)**
**(Brought by Plaintiff Bliss Against Defendants City of Asheville and Lamb)**

146.    Plaintiff Bliss re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

147.    Plaintiff Bliss brings claims against Defendants City of Asheville and Lamb under Article I, Section 20 of the North Carolina constitution.

148.    Article I, Section 20 provides: "General warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted."

149.    Article I, Section 20 protects North Carolinians against warrantless searches and seizures, and provides at least the same level of protection from unreasonable, warrantless seizures as the Fourth Amendment.

150.    The North Carolina Constitution authorizes a cause of action for damages against state officials in their official capacity when they violate the rights found in Article I, including the rights to free speech and equal protection.

151.    Plaintiffs lack an adequate state common law or statutory remedy to recover for a violation of their state constitutional right to free speech.

32

152.    For the same reasons articulated in the Third Claim for relief, Defendants' actions violate Article I, Section 20 of the North Carolina constitution.

153.    Plaintiff Bliss suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from the nearly month-long warrantless seizure of her phone.

### SEVENTH CLAIM

**Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa-1─2000aa-7**
**(Seizure of Plaintiff Bliss's Phone)**
**(Brought by Plaintiff Bliss Against City of Asheville)**

154.    Plaintiff Bliss re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

155.    Plaintiff brings claims against the City of Asheville under the Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa-1─2000aa-7 (PPA).

156.    The PPA provides, in relevant part: "It shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication." 42 U.S.C. § 2000aa-1(a).

157.    The PPA further provides: "It shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal

offense, to search for or seize documentary materials, other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication." 42 U.S.C. § 2000aa-1(b).

158.    The PPA authorizes "person[s]s aggrieved by a search for or seizure of materials in violation of [the PPA]" to bring "a civil cause of action for damages for such search or seizure" against the United States, a state that has waived immunity, or "any other governmental unit, all of which shall be liable for violations of this chapter by their officers or employees while acting within the scope or under color of their office or employment[.]"

159.    Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave knew that Plaintiff Bliss was a journalist who was newsgathering at the time of her arrest. While acting within the scope of their positions as APD officers, and under the authority of the APD, these Defendants seized and held Bliss' phone without a warrant for nearly a month after Bliss was released from jail.

160.    Plaintiff Bliss's seized phone contained work product and documentary materials related to her journalism, including notes, videos, and photos.

161.    No exigent circumstances justified Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave's lengthy seizure of Plaintiff Bliss' phone.

162.     For these reasons, and the same reasons articulated in the Third Claim, Defendants' actions violate the PPA.

163.     Plaintiff Bliss suffered emotional distress, stress, anxiety, fear, and economic losses because of the nearly month-long warrantless seizure of her phone.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter the following relief:

a. Declaratory judgment, pursuant to 28 U.S.C §§ 2201 and 2202, declaring that:

    i. The actions of Defendants City of Asheville, Lamb, Yelton, McClanahan, Lackey, McCain, Hawes, Griffin, A. Stapanowich, Overholt, and M. Stapanowich violated all Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Sections 14 and 19, 20 of the North Carolina constitution, and

    ii. Defendants City of Asheville, Lamb, M. Stapanowich, Cooper, Ziegler, and DeGrave violated Plaintiff Bliss' rights under the Fourth Amendment to the United States Constitution, Article I, Section 20 of the North Carolina constitution; and the PPA;

b. Permanent injunctions enjoining Defendants City of Asheville and Lamb from:

     i.  Arresting, approving, or directing the arrests of Plaintiffs Coit and Bliss or other *Blade* journalists solely because they remain on public property for the purpose of recording police activity and/or newsgathering;

    ii.  Failing to provide adequate training to APD officers on the rights of journalists to record and report on police activities, including in the specific context of policing at public protests.

c.  Award all available damages to all Plaintiffs, including compensatory and liquidated damages;

d.  Award attorneys' fees and costs pursuant to 42 U.S.C. §§1920, 1988, and 2000aa-6(f) or as otherwise authorized by law;

e.  Such additional and further relief as the Court may deem just and proper.


Dated: December 21, 2024            Respectfully submitted,

                          /s/ Ben C. Scales, Jr.
                          Ben C. Scales, Jr.
                          NC Bar No. 34873
                          Post Office Box 7382
                          Asheville, NC 28802
                          863-529-8312
                          ben_scales@yahoo.com

                          *Counsel for Plaintiffs*