## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF
## NORTH CAROLINA

| | |
|---|---|
| ASHEVILLE BLADE, LLC; MELISSA COIT; and MATILDA BLISS;<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF ASHEVILLE; MICHAEL YELTON, in his individual capacity; MICHAEL MCCLANAHAN, in his individual capacity; MELISSA LACKEY, in her individual capacity; JOHNATHAN MCCAIN, in his individual capacity; AMY STAPANOWICH, in her individual capacity; MATT STAPANOWICH, in his individual capacity; IAN COOPER, in his individual capacity; JOHN ZIEGLER, in his individual capacity; and SAMUEL DEGRAVE, in his individual capacity;<br><br>*Defendants*. | Case No. 1:24-cv-00307 MR-WCM<br><br>**<u>FIRST AMENDED COMPLAINT</u>** |

1

## NATURE OF THE ACTION

1.      During 2020-2021, *The Asheville Blade* ("*The Blade*"), a local news publication, published several articles in which its reporters harshly criticized the Asheville Police Department ("APD").  *Blade* journalists Melissa Coit and Matilda Bliss were responsible for many of these articles, a number of which focused on APD's treatment of homeless people and protestors. *The Blade's* criticism of APD was a local microcosm of national scrutiny focused on police departments and was published during a time when some Ashevillians regarded APD officers with growing suspicion.

2.      On the evening of December 25, 2021, a large group of APD officers executed a plan to clear an encampment of unhoused people and community activists in Aston Park.  Bliss and Coit, working on behalf of *The Blade*, were at the park to report on APD's activities.

3.      APD officers issued a dispersal order and began threatening arrests. Coit and Bliss identified themselves to APD officers as journalists and did not interfere with APD's clearing efforts. Bliss even backed away from the APD officers who confronted her. Nonetheless, APD officers arrested both journalists, charged them with second degree trespass, and held Bliss's phone for 25 days without obtaining a warrant.

2

4.      APD officers arrested Bliss and Coit because they were journalists engaged in scrutinizing APD's controversial activities on the night of December 25, 2021. In so doing, APD officers violated the rights of *The Blade*, Coit, and Bliss to record and report on police activities and to criticize the APD, as secured by the First Amendment to the U.S. Constitution and Article I, Section 14 of the North Carolina Constitution.

5.      After Plaintiff Bliss was released from custody, APD officers continued to violate her rights, as well as the rights of *The Blade*, by holding her phone without a warrant for 25 days, in violation of the Fourth Amendment to the U.S. Constitution, Article I, Section 20 of the North Carolina Constitution, and the Privacy Protection Act of 1980 ("PPA"), codified at 42 U.S.C. §§ 2000aa-1—2000aa-7.

6.      The City of Asheville's failure to train APD officers on the legal rights of journalists and the importance of not targeting citizens based on their scrutiny or criticism of the APD further violated Plaintiffs' rights.

## JURISDICTION AND VENUE

7.      This is an action for declaratory relief, injunctive relief, and damages brought under 42 U.S.C. § 1983, 42 U.S.C. § 2000aa-6, and 28 U.S.C. §§ 2201-2202.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction over the claims under 28 U.S.C. § 1343(a)(3)-(4) and 42 U.S.C. § 2000aa-6(h).

9. This Court has supplemental jurisdiction over related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the City of Asheville, located within this district.

11. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

12. Plaintiff *Asheville Blade, LLC* ("*The Blade*") is an Asheville-based news co-op that focuses on investigative reporting and airing "sharp views" on local issues, including the City's and APD's treatment of homeless individuals and protestors. *The Blade* was headquartered in and conducted reporting activities in Asheville at all times relevant to this Amended Complaint.

13. Plaintiff Melissa Coit, who is also known by and has written under the name Veronica Coit, is a journalist and one of four members of *The Blade*. Coit currently resides in Colorado but was a journalist residing and working in Asheville at all times relevant to this Amended Complaint. Coit uses "they/them" pronouns.

4

14. Plaintiff Matilda Bliss is a journalist and one of four members of *The Blade*. Bliss is a resident of Asheville and was a journalist residing and working in Asheville at all times relevant to this Amended Complaint.

15. Defendant City of Asheville ("the City") is a municipal corporation and a city organized by charter under Chapter 160A of the North Carolina General Statutes. Asheville, North Carolina, Code of Ordinances, pt. I, subpt. A, art. I, §§ 1, 3; 1981 N.C. Sess. Laws ch. 27. The City maintains supervisory responsibility over APD. The City, acting through the City Manager and APD, is responsible for the policy, practice, supervision, implementation, and conduct of all APD matters, including policies and practices challenged in this action, and the appointment, training, supervision, and conduct of APD personnel. Asheville, North Carolina, Code of Ordinances, pt. I, subpt. A, art. III, § 24; pt. II, art. I, ch. 13, § 13-1; N.C. Gen. Stat. § 160A-285.

16. Defendant Michael Yelton served as Deputy Chief of Operations for APD in December 2021. In this role, he supervised and controlled the activities of APD officers charged with enforcing state and local laws in Asheville, including laws applicable to assemblies and protests in public places. Yelton directed and supervised the APD's Aston Park clearing actions, including arrests, on the night of December 25, 2021. Upon information and belief, Defendant Yelton approved and ratified Coit and Bliss's arrests for trespassing on December 25, 2021,

5

knowing that they were journalists engaged in news gathering. Defendant Yelton is named in his individual capacity.

17. Defendant Michael McClanahan was an APD lieutenant in December 2021. Defendant McClanahan supervised and participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. McClanahan directed APD officers to arrest Coit and Bliss, knowing that they were journalists engaged in news gathering. Defendant McClanahan is named in his individual capacity.

18. Defendant Melissa Lackey was an APD sergeant in December 2021. Defendant Lackey supervised and participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. Lackey participated in the arrests of Coit and Bliss, knowing that they were journalists engaged in news gathering. Defendant Lackey is named in her individual capacity.

19. Defendant Johnathan McCain was an APD officer in December 2021. Defendant McCain participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. McCain participated in the arrests of Coit and Bliss, knowing that they were journalists engaged in news gathering. Defendant McCain is named in his individual capacity.

20. Defendant Amy Stapanowich ("A. Stapanowich") was an APD officer in December 2021. Defendant A. Stapanowich participated in APD's efforts to clear the Aston Park encampment on December 25, 2021. A. Stapanowich participated in

6

the arrests of Coit and Bliss, knowing that they were journalists engaged in news gathering. Defendant A. Stapanowich is named in her individual capacity.

21. Defendant Matt Stapanowich ("M. Stapanowich") was an APD officer in December 2021. As the officer primarily in charge of handling the property of people arrested on December 25, 2021, in connection with the clearing of the Aston Park encampment, M. Stapanowich participated in the seizure and retention of Plaintiff Bliss's phone. Defendant M. Stapanowich is named in his individual capacity.

22. Defendant Ian Cooper was an APD detective in December 2021. Defendant Cooper participated in the seizure and retention of Plaintiff Bliss's phone. On January 19, 2022, 25 days after Bliss's arrest, Defendant Cooper applied for a search warrant for Bliss's phone. Defendant Cooper is named in his individual capacity.

23. Defendant John Ziegler was an APD detective in December 2021. Defendant Ziegler supervised and participated in the seizure and retention of Plaintiff Bliss's phone. Defendant Ziegler is named in his individual capacity.

24. Defendant Samuel DeGrave was an APD detective in December 2021. Defendant DeGrave participated in the seizure and retention of Plaintiff Bliss's phone. Defendant DeGrave is named in his individual capacity.

7

## FACTS

25.     This case arises out of exceedingly rare circumstances—the arrest of two journalists while they were actively reporting on police activities in a public park.

26.     On the night of December 25, 2021, APD officers arrested Plaintiffs Coit and Bliss for second degree trespassing while they were reporting on the APD's clearing of an encampment of protestors and homeless people in Aston Park.

27.     These arrests were executed against a backdrop of escalating tension between APD and the press.

<u>PRESS CRITICISM OF APD</u>

28.     In recent years, the City of Asheville and its police department have come under increased media scrutiny arising from APD's treatment of protestors and the City's homeless population.

29.     The following articles, published prior to Bliss and Coit's arrests, are examples of such scrutiny:

- John Boyle & Katie Wadington, *Fact check: Police did destroy a medic area during protests in Asheville, North Carolina*, USA TODAY (June 3, 2020), https://perma.cc/LLM8-PN5E.

- *Tear gas, rubber bullets at Asheville protest for a second straight night*, WYFF 4 NBC (June 2, 2020), https://perma.cc/YBP2-DZRU.

- German Lopez, *"I can't breathe": Black man pleads as police officer punches and chokes him*, VOX (Apr. 3, 2018), https://perma.cc/43VA-SAWJ

8

(describing an APD officer punching, using a stun gun, and putting a Black man in a chokehold for jaywalking).

- Joel Burgess, *Video shows Asheville police officer beating man suspected of jaywalking, trespassing,* Asheville Citizen-Times (Feb. 28, 2018), https://archive.ph/Ie8fJ.

- Beth Walton, *Arrested Reporter Speaks Out,* Asheville Citizen-Times (Aug. 5, 2016), https://perma.cc/4GQK-2DYL.

30.     The APD has expressed hostility towards press scrutiny.

31.     In the summer of 2020, the City conducted a survey among APD officers about its response to the George Floyd protests. During a listening session, APD officers were asked, "What does safety mean to you?" The answers highlighted in the City's summary report included: "No scrutiny from media" and "[k]nowing your decisions will not be scrutinized."

32.     Since 2016, APD has arrested reporters at least four times. Three of those arrests involved reporters for *The Blade*.

33.     In 2016, APD arrested a *Mountain Xpress* reporter for allegedly blocking an entrance while he was reporting on a Black Lives Matter protest at APD headquarters.

34.     On August 9, 2020, Coit was arrested while covering a protest.

35.     Coit was removed from their car and arrested for failure to disperse and impeding traffic while covering the protest for *The Blade*.

36.     While being arrested, Coit declared loudly that they were press.

37. Coit was released five hours after the arrest.

38. Following the arrest, Coit wrote and *The Blade* published an account of the arrest. Veronica Coit, *A Blade reporter's arrest*, Asheville Blade, (Aug. 16, 2020), https://perma.cc/6N3B-MB3C.

39. In the article, Coit was highly critical of how APD treated them.

40. The article concludes: "There was no reason to keep me there, except power. Cops will do that. They'll hurt you, just to remind you that they're in control, they're in charge, and you're not. Even when what they're doing is wrong and illegal."

41. The District Attorney's Office ultimately declined to prosecute the 2020 charges against Coit.

42. In 2021, APD cleared over twenty homeless encampments.

43. *The Blade* published several articles criticizing APD's treatment of the homeless population, many of which Plaintiffs Bliss and Coit contributed to. *Blade* publications included the following:

- An article stating "[s]ince its inception back in the days when funerals for apd officers were held in full klan regalia, their true purpose has been sowing violence and terror against Black, Latinx, houseless and working class locals." Matilda Bliss, *These halls will shake*, Asheville Blade (July 13, 2020) https://perma.cc/RDK4-EA9E.
- An article stating that APD "annihilated" an encampment of homeless individuals "heartless[ly]" "in the dead of winter at a time when shelter beds are more limited than ever due to COVID-19." Orion Solstice, *Out in the cold,*

10

Asheville Blade (Feb. 2, 2021) https://perma.cc/T57H-8AFG (noting that Coit contributed).

- An article stating "[An] APD press release bragged 'APD Apprehends 49 Repeat Offenders'. . . . 12 were primarily hit with second-degree trespassing charges. This is overwhelmingly used against homeless people simply trying to find a place to sleep. Another 12 were charged with panhandling; merely asking for cash or food." David Forbes, *Another day, another crackdown*, Asheville Blade (Nov. 3, 2021), https://perma.cc/CY9Y-SKTU (noting that Coit provided photographs for the article).

- An article describing the APD's activities on April 19, 2021: "[t]he police would brutally attack and arrest four people, sending three to jail and one Black houseless person to the emergency room in handcuffs" and "[i]t is worth remembering that this is the same police department that claimed last summer that they had to destroy medics' water bottles because they might be explosives. The APD lies." David Forbes, *Eviction season,* Asheville Blade (Apr. 19, 2021), https://perma.cc/NN8T-BXL5 (noting that Coit photographed and contributed to *The Blade's* coverage of the April 2021 clearing of Aston Park).

44. In April 2021, Coit reported on APD's clearing of a homeless encampment in Aston Park. Coit took photos and contributed to *The Blade's* piece about the event, titled "Eviction Season."

45. APD officials were aware of *The Blade's* critical coverage.

46. Following the April 2021 clearing of Aston Park, the head of a neighborhood watch group emailed APD officers about "trying to fight back" against *The Blade*. Officers forwarded the email to their colleagues at APD and City Manager Debra Campbell.

47. On information and belief, some of the officers directly involved in the arrests of Bliss and Coit, including McClanahan and A. Stapanowich, received

11

the email and were otherwise aware of APD and City officials' hostility towards *The Blade* and its reporters.

48. Upon information and belief, the officers involved in arresting Bliss and Coit on Christmas night targeted Bliss and Coit because of *The Blade's* critical coverage of the April 2021 clearing of Aston Park.

CHRISTMAS NIGHT ARRESTS OF REPORTERS COIT AND BLISS

49. On December 19, 2021, community supporters of Asheville's homeless population began a multi-day protest and art build at a homeless encampment in Aston Park, a public park owned and operated by the City.

50. Coit went to the park at least once before December 25, 2021, to photograph the protests for *The Blade*.

51. After hearing about the potentially newsworthy interactions between APD officers and protesters, Bliss covered the second day of the protest for *The Blade*.

52. Bliss returned to the protest at least three times to report for *The Blade*. Her coverage included photojournalism, contributions to articles on *The Blade's* website, and posts to *The Blade's* public social media channels criticizing APD and the City.

53. On December 19, 2021, the first day of the protest, APD officers announced that campers and protesters remaining in the park past 10:00 p.m. would

12

be arrested for trespass based on a City ordinance that established a curfew in public parks.

54. APD did not take official action against any protesters until Christmas night when, shortly after 10:00 p.m., APD began dismantling the encampment and ordering those assembled there to leave the park.

55. Prior to the 10:00 curfew, Bliss was present and reporting on the events. Prior to the 10:00 curfew, Coit joined Bliss at the park to bring her Christmas dinner and then stayed to assist with reporting.

56. Neither Bliss nor Coit interfered with the efforts of the APD to disperse and clear the assembly in the park.

57. As APD officers approached the park that evening, Bliss and Coit were among the first people they confronted.

58. Bliss wore her *Blade*-issued official press credential to identify herself as a journalist. The press credential was white and red and reflective. Bliss wore it outside of her clothes at all times during the encounter.

59. Bliss's press badge is visible on APD body camera footage documenting her arrest, as illustrated in the images below:

13





60.     As officers approached, Bliss and Coit began documenting the officers' actions by video and audio.

61.     Coit did not have their press credentials. Both Bliss and Coit repeatedly and loudly stated that they were journalists engaged in covering what was

happening in the park and specifically made these statements to APD officers attempting to disperse them.

62. Defendant McClanahan instructed Bliss and Coit to disperse along with the protesters despite their statements that they were press reporting on the event.

63. Defendant McClanahan directed Bliss and Coit to leave the park premises and to observe and report from a spot about 150 feet away and down a hill.

64. Bliss and Coit could not observe, record, or report on the protest and the APD's clearing of the encampment from the spot identified by APD because it was at the bottom of a hill and had an obstructed view of the park.

65. After reminding the APD officers of their status as journalists and asserting their rights to report on an event of public concern in a public park, Bliss and Coit continued doing their jobs and documenting the newsworthy events occurring in plain view.

66. As police officers spread out around the park, body camera footage shows several officers making comments about arresting protestors who were critical of them, including saying things like "give me $20 bucks and I'll charge her [a protestor] with disorderly conduct," and "if we're going to arrest someone, we're going to arrest the loudest one."

67.   APD officers, commanded by Defendant McClanahan, gathered to discuss their plans for arresting people in the area of the encampment. Body camera footage recorded Defendant Lackey stating, "[w]hy don't we do [Bliss and Coit] first, since they're videotaping."

68.   As more officers arrived several minutes later, Defendant Lackey repeated her suggestion that "we need to start with the ones that are videotaping" to the assembled officers, which included Defendants McClanahan and A. Stapanowich.

69.   After Defendant Lackey's comment, Defendant McClanahan ordered the officers to "get them," referring to Coit and Bliss.

70.   Defendants A. Stapanowich and Lackey approached Coit and demanded they leave the premises.

71.   Coit responded that they were covering a story as part of the press and asserted their right to observe and report police activity on public property.

72.   Bliss also emphasized that she was a member of the press covering a story.

73.    Bliss wore a press badge, which was prominent and visible at all times during her encounters with APD officers.

74. Defendant Lackey returned to Defendant McClanahan and informed him of Plaintiff Coit's claim that Coit and Bliss could not be arrested by APD because they were reporters.

75. Defendant McClanahan replied: "Yes, we can."

76. Defendant McClanahan instructed APD officers to arrest Plaintiffs Bliss and Coit. Coit was arrested at 10:29 p.m. and Bliss was arrested at 10:30 p.m.

77. Officer Taya Overholt led the arrest of Plaintiff Coit, assisted by Defendants Lackey, McClanahan, and A. Stapanowich.

78. After Defendant officers arrested Coit, Defendant McCain remarked to Defendant McClanahan and other defendant officers "[h]ere's your other member of the press. Wonder if [Bliss] is going to wise up."

79. Even as Bliss explained she was a reporter, she was backing away from APD officers. However, Defendant McClanahan continued to pursue her.

80. Officer Melanie Griffin led the arrest of Plaintiff Bliss, assisted by officers Lakeisha Hawes and Defendant McCain.

81. Both Coit and Bliss were surprised at how little warning they received before the officers arrested them.

82. Before arresting Bliss, body camera footage shows Griffin speaking to Defendant McCain and relaying a conversation she had with another officer. Griffin states that in the previous conversation, she asked, "what if we just didn't give them

17

an audience?" According to Griffin, the officer she was speaking to responded: "the deputy chief would have my head." Griffin then said to Defendant McCain: "we don't care, they don't care, why are we here?"

83. Upon information and belief, the deputy chief insisting on the arrests of Bliss and Coit was Defendant Yelton.

84. Defendant M. Stapanowich collected Bliss's and Coit's phones and logged the items into APD's system.

85. Plaintiffs Bliss and Coit were charged with second-degree trespass, processed at the Buncombe County Detention Center, and released early on the morning of December 26, 2021.

86. Coit received their phone back upon release.

87. Defendant M. Stapanowich held Bliss's phone without having any warrant or having issued a subpoena.

88. Over the next 25 days, Bliss and her attorney repeatedly requested that her phone be returned. Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave continued to hold and refused to return Bliss's cell phone despite not having a warrant authorizing them to do so and without having issued a subpoena.

89. Bliss did not consent to the seizure of the phone at any point.

18

90. APD did not provide Bliss or her attorney with a reason for continued possession of the phone other than initially indicating, without explanation, that the phone needed to be held until the holidays passed.

91. On January 14, 2022, Bliss's criminal attorney, Ben Scales, emailed the District Attorney's office requesting that her property, including the cell phone, be returned. In that email, Mr. Scales stated that Bliss was a reporter for *The Blade* covering the clearing of a homeless encampment in Aston Park on Christmas day and her cell phone was seized in the process of her arrest.

92. In response, Meredith Mercer, an Assistant District Attorney, indicated that she sent an email to an APD officer to verify whether the property was needed for further investigation. Mercer noted in parentheses that she did not expect that it was needed, but she nonetheless had to check before authorizing release. She went on to state that she would send an email to property authorizing the release of the phone, backpack, and charger once she heard back that the property was not needed.

93. On January 19, 2022, Defendant Ian Cooper, a detective with APD, applied for a search warrant for Bliss's phone. Cooper's affidavit in support of a warrant to search Bliss's phone states: "[A] conspiracy was uncovered involving at least 19 suspects. Through executing a search warrant on one of the suspect's phones it was found that these suspects had communicated extensively about the protest on

19

12/21/21. Throughout the communication, members planned various aspects of the protest, ranging from its date to how they would deter the police from arresting them. They decided collectively to bill the protest as an 'art party' with the intention to 'wield that nonthreatening artist spin' and use 'heavy positive propaganda' to create an 'impediment' that would prohibit police intervention, especially because 'the optics of evicting camps around Christmas might be too much for the city.'"

94. The warrant also states: "Through a review of Bliss's social media, she has extensive links to anarchist extremist groups including Asheville Social Justice Schedules which she lists herself as an 'author' for that page. On 12/21/21 Bliss lists, a 'community art build' on Tuesday 12/21/21 with an Instagram link which has since been removed. This community art build was identified as the protest where nearly 2000 lbs of litter were left and Bliss had prior knowledge of that protest."

95. Almost all of the activities alleged by Defendant Cooper in his affidavit, including holding an "art party," "wield[ing] that nonthreatening artist spin," engaging in "heavy positive propaganda," and having "extensive links to anarchist extremist groups," are lawful and protected by the First Amendment.

96. None of Defendant Cooper's allegations indicated that Bliss herself had participated in littering, nor did it indicate that she had done anything related to the park protests other than post about it on social media.

20

97. The application does not identify Bliss as a journalist and did not indicate any awareness that the First Amendment or the Privacy Protection Act (PPA) were implicated by the seizure of Bliss's phone.

98. Plaintiff Bliss was not provided with any opportunity to oppose the issuance of a warrant.

99. The warrant for Bliss's phone was issued on January 19, 2022. Defendant Cooper's affidavit was the sole evidence provided in support of the warrant application.

100. On March 8, 2022, following several unsuccessful attempts to get Bliss's phone returned, Bliss's criminal attorney filed a motion for return of property.

101. After its contents were searched, the phone was released to Bliss on March 8, 2022, 74 days after its initial seizure.

102. In December 2021, City Manager Campbell and APD's then-Chief of Police David Zack were responsible for setting departmental policy related to police interactions with journalists who are recording and newsgathering in public places.

103. Campbell and Zack had ultimate authority and responsibility to train and instruct APD personnel on the First Amendment rights of journalists and to oversee and control APD enforcement of trespassing laws against newsgathering journalists.

21

104. Upon information and belief, City Manager Campbell and Chief Zack, as ultimate policymakers for the APD, failed to train and instruct APD officers on how to enforce trespassing and other generally applicable laws without retaliating against citizens for their speech, and without violating the constitutional and statutory rights of journalists to gather news and maintain the privacy of their work product. Campbell and Zack also did not direct others to train and instruct APD officers on protecting these rights. On the contrary, Campbell and Zack expressed their approval of the APD's arrests of Bliss and Coit.

105. Following the APD's arrests of Bliss and Coit, then-APD Chief Zack stated: "I've dealt with hundreds of journalists and never had to arrest one. So, something is different in this situation which is obvious." Zack further stated: "*[M]aybe, it was the journalists who were the problem*."

106. At a January 25, 2022, public safety committee meeting, City Manager Campbell spoke in support of Bliss and Coit's arrests and claimed that police have discretion to decide who is a journalist and who is not.

107. Bliss and Coit were banned from all city parks from December 25, 2021, to December 25, 2022, because of their criminal trespassing charges.

108. These bans prevented Bliss and Coit from gathering news at events that occurred within any city park during that one-year time frame.

109. The APD has enforced the curfew at Aston Park inconsistently. Publicly available APD arrest records show that between 2012 and the date of Plaintiffs' arrests, only thirteen individuals have been charged with second-degree trespass within one hour of the park's curfew. Six of those individuals, including Coit and Bliss, were arrested on December 25, 2021, in connection with the events at issue in this case.

110. Body camera footage from December 25, 2021, also shows a man not involved in the protest walking through the park as officers are arresting protestors and journalists. An APD officer approached this man to inform him that the park is closed after 10:00pm. The man replied that he was just passing through the park on his way to get beer. The APD officer did not follow, arrest, or threaten to arrest this person for violating the park curfew, even though the encounter occurred after 10:00pm when the park was closed.

111. Upon information and belief, APD routinely declines to enforce the curfew against individuals engaged in activities such as jogging or walking in the early morning hours before Aston Park's official opening. APD's arrest records reflect that, since at least 2012, no person has been charged with trespass at Aston Park between 3:30 a.m. and 6:00 a.m.

112. Additionally, arrests of journalists in North Carolina for trespassing (or for any reason) are exceedingly rare.

23

113. From 2017 to the present, there have only been nine on-the-job arrests of journalists in North Carolina. Three of these arrests involved Bliss and/or Coit.

114. During this same period, Bliss and Coit were the only journalists charged with trespassing while they were engaged in reporting.

CRIMINAL PROCEEDINGS

115. After their Christmas arrest, Bliss and Coit were tried and convicted of second-degree trespassing at the April 19, 2023, session of the Criminal District Court of Buncombe County.

116. The two appealed for a jury trial *de novo* in Superior Court.

117. Bliss and Coit were tried and convicted before a jury on June 15, 2023, in the Superior Court of Buncombe County.

118. Bliss and Coit appealed their conviction to the North Carolina Court of Appeals and were represented by the First Amendment Clinic at Duke Law School, Ben Scales, and Alan Graf.

119. While the appeal was pending, Coit, Bliss, and *The Blade* initiated this civil action. On March 18, 2025, the parties filed a joint motion in this Court requesting a stay in this case pending resolution of the state court appeal in Coit and Bliss's criminal case. This Court partially granted that motion and ordered that this case be temporarily stayed until final resolution of the criminal matter.

120. On June 4, 2025, in an unpublished opinion, the North Carolina Court of Appeals found that there was no error in Coit and Bliss's trespassing convictions. *State v. Bliss*, No. COA24-92, 2025 WL 1576187 (N.C. Ct. App. June 4, 2025) (unpublished).

THE AFTERMATH OF THE ARRESTS

121. *The Blade* is well known for its regular reporting on matters of homelessness and police brutality.

122. On Christmas night 2021, Coit and Bliss were covering the protest at Aston Park. Coit and Bliss had also previously covered the protest on December 19, 20, 21, and 22.

123. In addition to traditional reporting activities, Bliss and Coit were live reporting on APD's activities on *The Blade's* social media platforms.

124. As a result of Bliss and Coit's arrest, *The Blade* was unable to fully cover the subsequent arrests of protestors and homeless people. Nor could *The Blade* continue live-reporting APD's activities for its social media platforms. *The Blade* is a small news outlet with limited resources.

125. *The Blade's* ability to quickly arrive on scene and report effectively on local news has suffered because half of its staff was arrested and embroiled in legal proceedings.

126. *The Blade* has been unable to cover key events and policy meetings because its journalists were required to attend court, whether as defendants or witnesses, and were banned from city parks.

127. For example, on January 25, 2023, there was a joint meeting of Asheville City Council and the Buncombe County Board of Commissioners to discuss policy on homelessness, an issue of key importance to *The Blade's* subscribers. *The Blade* wanted to cover the meeting live but could not because Bliss and Coit had a court date.

128. On June 13, 2023, there was a full City Council meeting where the Council discussed the official report on the water system breakdown earlier that year. *The Blade* had reported extensively on the water system breakdown and wanted to attend this meeting but was unable to because Bliss and Coit had a court date.

129. Generally, *The Blade* is no longer able to cover City Council work sessions and committee meetings because of its reduced capacity.

130. *The Blade* has lost reporting opportunities due to the time its reporters spent defending themselves from retaliatory criminal charges rather than reporting the news.

131. *The Blade* experienced a reduced rate of donations and subscriptions because of its inability to provide the same level of news coverage following Bliss and Coit's arrests. Because *The Blade* could not report on local issues as

26

comprehensively as it had prior to the arrests, some existing subscribers canceled their subscriptions entirely.

132.    *The Blade* also had to pay Bliss and Coit hazard pay for the time they spent in jail.

133.    Since the arrest, Bliss has suffered severe emotional and physical health ailments attributable to the anxiety and fear that her arrest and criminal charges have caused.

134.    Since her arrest, Bliss has attended over twenty doctor's appointments, compared to nine visits total between January 2018 and December 2021.

135.    Among other symptoms of her increased emotional distress and stress, Bliss has been diagnosed with gastroesophageal reflux disease (GERD) and required extensive dental work to address tooth grinding. She has also visited the emergency room multiple times since December 2021, including for chest and abdominal pain, rapid pulse, and elevated blood pressure.

136.    Bliss's mental health has deteriorated significantly since her 2021 physical exam prior to the arrest, and she has experienced increased anxiety and depression.

137.    As a result of these health issues, Bliss has spent unexpected money on medical care, insurance, and supplies.

138. Since the arrest, Coit also has suffered severe emotional and physical health ailments attributable to the anxiety and fear that their arrests and criminal charges have caused.

139. Coit has experienced feeling dehumanized, hypervigilant, powerless and violated, as if their rights didn't matter.

140. Deep emotional, psychological, and practical harm caused by the arrest continues to impact the lives of Coit and their family.

141. Coit's arrest and criminal charges contributed to their decision to leave Asheville. Before moving, they adjusted their routes to avoid Aston Park. Being in the area triggered intense panic, including chest tightening, heart racing, and shaking hands.

142. Police cars, uniforms, and sirens cause Coit particular anxiety and fear. They have experienced nightmares and insomnia as a result of their arrest and charges, as well as increased gastrointestinal issues and joint pain. Their personal relationships with their spouse and child became strained.

143. The financial impact of the arrest and charges on Coit has been significant, including legal costs, lost income, and ongoing medical expenses.

144. Bliss and Coit have feared APD targeting them because of their reporting, especially on matters of homelessness and police brutality, two issues that *The Blade* regularly reports on.

145. Threats of arrest or being arrested for engaging in protected activity or having one's cell phone seized without a warrant are actions that would deter a person of ordinary firmness and sensibilities from exercising their First Amendment rights.

## CLAIMS FOR RELIEF

## FIRST CLAIM

**42 U.S.C § 1983 and the First Amendment to the U.S. Constitution**
**(Violation of Rights to Speech and Press, Recording, and Newsgathering -**
**Retaliatory and Selective Enforcement)**
**(Brought by All Plaintiffs Against all Defendants)**

146. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 145 as if fully set forth here.

147. Pursuant to 42 U.S.C. § 1983, Plaintiffs assert that the targeted and retaliatory enforcement of trespassing laws against them by Defendants Yelton, McClanahan, Lackey, McCain, and A. Stapanowich (in their individual capacities) violates Plaintiffs' First Amendment rights to freedom of speech and press (as applied to Defendants by the Fourteenth Amendment). This retaliatory enforcement was a predictable result of the City of Asheville's failure to train APD officers on the appropriate treatment of journalists engaged in newsgathering. Plaintiffs further assert that Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave's extended retention of Bliss's phone was motivated by Bliss's and *The Blade*'s protected

29

speech and reporting, in violation of the First Amendment rights to freedom of speech and press (as applied to Defendants by the Fourteenth Amendment).

148. Under the First Amendment, government officials may not "abridg[e] the freedom of speech, or of the press[.]" U.S. Const. amend. I.

149. Plaintiffs have engaged in extensive, published criticism of the APD, especially concerning APD's treatment of protestors and homeless people.

150. Plaintiffs have First Amendment rights to observe, record, speak, and gather news about police activities without retaliation for their critical statements and reporting.

151. Defendants Yelton, McClanahan, Lackey, McCain, and A. Stapanowich targeted Bliss and Coit for arrest and trespassing charges because of their recording of and reporting on controversial APD activities to clear a homeless encampment and arrest protestors. These Defendants' decisions to arrest and charge Plaintiffs Coit and Bliss were motivated by Plaintiffs' critical speech and reporting.

152. From 2017 to the present, only nine journalists total have been arrested in North Carolina while covering the news. Three of those arrests involve Plaintiffs Coit and/or Bliss.

153. Plaintiffs Bliss and Coit have been the only journalists in North Carolina arrested and charged with trespassing while newsgathering since at least 2017.

154. Defendants Yelton, McClanahan, Lackey, McCain, and A. Stapanowich arrested, directed, and/or approved of the arrests of Plaintiffs Coit and Bliss and enforced trespassing laws against them because of Plaintiffs' critical reporting and speech related to APD, particularly related to APD's treatment of protestors and homeless individuals.

155. By arresting Plaintiffs and charging them with trespassing, these Defendants punished Plaintiffs for their recording, reporting, and speech in an attempt to suppress and chill further reporting and speech by Plaintiffs, in violation of the First Amendment.

156. By retaining Plaintiff Bliss's phone for months after her arrest, Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave targeted and punished Bliss and *The Blade* for their views, speech, and reporting.

157. Because Plaintiff Bliss used her phone in connection with her reporting, the retention of the phone created an additional impediment to Bliss's protected First Amendment activity in the 74 days it was retained.

158. Being threatened with arrest, being arrested for engaging in protected activity, or having one's phone held by the police for months, would deter a person of ordinary firmness from exercising their First Amendment rights.

159. Objective evidence shows that other similarly situated individuals were treated differently by Defendants. For example, body camera footage from

December 25, 2021 shows a man who was not involved in the protest walking through the park as officers are arresting protestors and journalists. An APD officer approached to inform the man the park is closed after 10:00 p.m. After the man responded that he was just passing through the park on his way to get beer, the APD officer did not follow, arrest, or threaten to arrest him, even though the encounter occurred after 10:00 p.m. when the park was closed, and even as protestors and journalists were being arrested for trespassing.

160. Moreover, at the time of Coit and Bliss's arrests, people regularly visited Aston Park during curfew hours for recreational or other (non-expressive and non-journalistic) purposes, yet were not arrested for trespassing.

161. Upon information and belief, the APD does not normally hold the phones of people it arrests for 25 days without a warrant.

162. Defendant City of Asheville does not have a policy that protects the rights of journalists to gather news about police engaged in the public performance of their duties.

163. Defendant City of Asheville failed to train APD officers in the appropriate treatment of journalists engaged in newsgathering. Nor did the City train APD officers on the importance of not arresting people and not retaining arrestee property for retaliatory purposes, even where probable cause may exist.

32

164. The APD's retaliatory arrest of Bliss and Coit was a predictable outcome of the City of Asheville's deliberate indifference to the rights of journalists to gather news about and criticize the police.

165. Plaintiffs suffered damages because of the retaliatory arrests and charges against Bliss and Coit.

166. Plaintiffs Bliss and Coit suffered emotional distress, stress, anxiety, and fear, as well as economic losses resulting from their arrests and charges.

167. Plaintiff *The Blade* experienced economic losses due to the arrests and charges against Plaintiffs Coit and Bliss, including lost reporter time and reduced frequency and content of reporting, which in turn impacted its ability to attract and retain subscribers and patrons.

## SECOND CLAIM

**42 U.S.C § 1983 and the Fourth Amendment to the U.S. Constitution**
**(Seizure of Plaintiff Bliss's Phone)**
**(Plaintiff Bliss Against Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave)**

168. Plaintiff Bliss re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 167 as if fully set forth here.

169. Plaintiff Bliss asserts claims against Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave (in their individual capacities) pursuant to 42 U.S.C. § 1983, because Defendants' warrantless seizure of her phone violated her Fourth

Amendment rights against unreasonable searches and seizures (as applied to Defendants by the Fourteenth Amendment).

170. Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave held Bliss's phone after Bliss's release from jail for 25 days without any warrant. This prolonged seizure was unreasonable and not necessitated by any exigent circumstances.

171. Plaintiff Bliss suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from the lengthy seizure of her phone.

## THIRD CLAIM

### Article I, Section 14 of the North Carolina Constitution
### (Retaliation for Speech and Newsgathering)
### (Against Defendant City of Asheville)

172. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 171 as if fully set forth here.

173. Plaintiffs bring claims against Defendant City of Asheville under Article I, Section 14 of the North Carolina constitution.

174. Article I, Section 14 provides: "Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse."

175. Article I, Section 14 provides at least the same level of protection for the press and free speech as the First Amendment to the United States Constitution.

34

176. The North Carolina Constitution authorizes a cause of action for damages against government entities when its officials violate the rights found in Article I, including the rights to free speech and the press.

177. Plaintiffs lack an adequate state common law or statutory remedy to recover for a violation of their state constitutional rights to free speech and press.

178. For the same reasons articulated in the First Claim for relief, Defendants' actions violate Article I, Sections 14 of the North Carolina Constitution.

179. Plaintiffs suffered damages as a result of the arrests of and charges against Plaintiffs Coit and Bliss.

180. Plaintiffs Bliss and Coit suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from their arrests and charges.

181. Plaintiff Bliss suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from the City's extended retention of her phone.

182. Plaintiff *The Blade* experienced economic losses due to the arrests and charges against Plaintiffs Coit and Bliss, including lost reporter time and reduced frequency and content of reporting, which in turn affected its ability to attract and retain subscribers and patrons.

## FOURTH CLAIM

### Article I, Section 20 of the North Carolina Constitution
### (Seizure of Plaintiff Bliss's Phone)
### (Brought by Plaintiff Bliss Against Defendant City of Asheville)

183. Plaintiff Bliss re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 182 as if fully set forth here.

184. Plaintiff Bliss brings claims against Defendant City of Asheville under Article I, Section 20 of the North Carolina Constitution.

185. Article I, Section 20 provides: "General warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted."

186. Article I, Section 20 protects North Carolinians against warrantless searches and seizures and provides at least the same level of protection from unreasonable, warrantless seizures as the Fourth Amendment to the United States Constitution.

187. The North Carolina Constitution authorizes a cause of action for damages against government entities when its officials violate the rights found in Article I, including the right to be free from warrantless searches and seizures.

36

188. Plaintiffs lack an adequate state common law or statutory remedy to recover for a violation of their state constitutional right to be free from unreasonable searches and seizures.

189. For the same reasons articulated in the Third Claim for relief, the City's actions violate Article I, Section 20 of the North Carolina Constitution.

190. Plaintiff Bliss suffered emotional distress, stress, anxiety and fear, as well as economic losses resulting from the nearly month-long warrantless seizure of her phone.

## FIFTH CLAIM

**Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa-1─2000aa-7**
**(Seizure of Plaintiff Bliss's Phone)**
**(Brought by Plaintiffs *The Blade* and Bliss Against City of Asheville)**

191. Plaintiffs *The Blade* and Bliss re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 190 as if fully set forth here.

192. Plaintiffs bring claims against the City of Asheville under the Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa-1─2000aa-7 ("PPA").

193. At all times relevant to this complaint, the City employed Defendants Ziegler, Cooper, M. Stapanowich, and DeGrave through the APD.

194. The PPA provides, in relevant part: "It shall be unlawful for a government officer or employee, in connection with the investigation or prosecution

37

of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication." 42 U.S.C. § 2000aa-1(a).

195. The PPA further provides that "In the event a search warrant is sought pursuant to paragraph (4)(B) of subsection (b), the person possessing the materials shall be afforded adequate opportunity to submit an affidavit setting forth the basis for any contention that the materials sought are not subject to seizure." 42 U.S.C. § 2000aa-(c).

196. Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave knew that Plaintiff Bliss was a journalist who was newsgathering for *The Blade* at the time of her arrest and that the phone seized contained journalistic materials and work product (including notes, photos, and video) belonging to Bliss and intended to be used for reporting in *The Blade*.

197. While acting within the scope of their positions as APD officers, and under the authority of the APD, these Defendants seized and held Bliss's phone without a warrant for 25 days after Bliss was released from jail.

198. The prolonged seizure continued despite requests by Bliss and her attorney that Bliss's phone be returned to her.

199. No exigent circumstances justified Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave's lengthy seizure of Plaintiff Bliss's phone.

200. Moreover, when Defendant Cooper finally sought a warrant, his application and supporting affidavit failed to assert facts sufficient to justify a search of Plaintiff Bliss's phone under the restrictions of the PPA.

201. Defendant Cooper's application directly led to the issuance of a warrant, under which Plaintiff Bliss's phone was retained until March 8, 2022, in violation of the PPA.

202. Plaintiff Bliss was not given the opportunity to submit an affidavit contesting the application for a warrant to search her phone.

203. Defendants' actions violate the PPA. As a result of the City's violation of 42 U.S.C. § 2000aa-1, Plaintiffs are entitled to recover damages in the amount of not less than $1,000 and reasonable attorney and other litigation costs.

204. Plaintiff Bliss lost continuous use of the seized and retained phone.

205. Plaintiff Bliss suffered emotional distress, stress, anxiety, fear, and economic losses because of the nearly month-long warrantless seizure of her phone.

206. Plaintiff *The Blade* lost the opportunity to timely make use of the electronic media contained within the seized phone.

## SIXTH CLAIM

### Failure to Train Leading to Violations of the Privacy Protection Act of 1980, 42 U.S.C. §§ 2000aa-1—2000aa-7
### (Brought by Plaintiffs Bliss and *The Blade* Against City of Asheville)

207.   Plaintiffs Bliss and *The Blade* re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 206 as if fully set forth here.

208.    Defendant City of Asheville is responsible for ensuring that city agencies comply with the law, including the PPA. At all times relevant to this complaint, the City employed Defendants Ziegler, Cooper, M. Stapanowich, and DeGrave through the APD. The City is ultimately responsible for the operations, practices, and customs of APD.

209.   Government entities are responsible and liable for the actions of officers who violate the PPA.

210.   The APD does not have a policy that defines journalist, member of the press or news media representative. Nor did they have any policy training officers about the rights of reporters under the PPA.

211.   Defendants M. Stapanowich, Cooper, Ziegler, and DeGrave knew or reasonably should have known at the time they seized and held Bliss's phone that the materials on Bliss's mobile phone were possessed in connection with a purpose

to disseminate to the public a newspaper, book, broadcast or other similar form of public communication.

212. Further Defendant Cooper knew or should have known that the allegations he made in support of an application for a warrant to retain Bliss's phone were insufficient and did not comply with PPA.

213. The seizure and retention of Bliss's phone from December 25, 2021 to March 8, 2022 was the result of inadequate training on the part of APD.

214. Plaintiff Bliss suffered emotional distress, stress, anxiety, fear, and economic losses because of the lengthy seizure of her phone.

215. Plaintiff *The Blade* lost the opportunity to timely make use of the electronic media contained within the seized phone.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter the following relief:

a. Declaratory judgment, pursuant to 28 U.S.C §§ 2201 and 2202, declaring that:

   i. The actions of all Defendants violated Plaintiffs' rights under the First Amendment to the United States Constitution, and;

   ii. The actions of Defendant City of Asheville violated Plaintiffs' rights under Sections 14 and 20 of the North Carolina Constitution;

41

    iii.   Defendants City of Asheville, M. Stapanowich, Cooper, Ziegler, and DeGrave violated Plaintiff Bliss's rights under the Fourth Amendment to the United States Constitution; and

    iv.   Defendant City of Asheville violated Plaintiff Bliss's and *The Blade's* rights under the PPA.

b.  A permanent injunction enjoining Defendant City of Asheville from failing to provide adequate training to APD officers on the rights of journalists to record and report on police activities, including in the context of policing at public protests;

c.  Award all available damages to all Plaintiffs, including compensatory and liquidated damages;

d.  Award attorneys' fees and costs pursuant to 42 U.S.C. §§1920, 1988, and 2000aa-6(f) or as otherwise authorized by law;

e.  Such additional and further relief as the Court may deem just and proper.

Dated: September 30, 2025            Respectfully submitted,

                          */s/ C. Amanda Martin*
                          C. Amanda Martin (Bar No. 21186)
                          Sarah Ludington (Bar No. 19997)
                          **First Amendment Clinic**
                          **Duke Law School**
                          210 Science Drive

Durham, NC 27708
T: (919) 613-7048
F: (919) 613-7262
E: amartin@law.duke.edu
E: ludington@law.duke.edu

Kristi Graunke (Bar No. 51216)
**ACLU of North Carolina Legal
Foundation**
PO Box 28004
Raleigh, NC 27611
T: (919) 354-5066
E: kgraunke@acluofnc.org

Ben C. Scales, Jr.
NC Bar No. 34873
Post Office Box 7382
Asheville, NC 28802
T: 863-529-8312
E: ben_scales@yahoo.com

*Counsel for Plaintiffs*

43

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 29, 2025, the foregoing *First Amended Complaint* was filed electronically with the Clerk of the United States District Court for the Western District of North Carolina using the CM/ECF system which will send notification of this filing and an electronic copy of the same to all counsel of record registered with the CM/ECF system.

This is the 30th day of September 2025.

<div style="margin-left: 50%;">

FIRST AMENDMENT CLINIC
DUKE LAW SCHOOL
Attorneys for Plaintiffs
*/s/ C. Amanda Martin*
C. Amanda Martin
N.C. State Bar No. 21186
amartin@law.duke.edu

</div>